IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| James Rowedder, ) | C/A. No. 2:22-2371-RMG |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Primal Vantage Company, Inc., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendants' motion to exclude the testimony of Rick Brenner (Dkt. No. 93). For the reasons set forth below, the Court denies Defendant's motion.

I.   **Background**

Plaintiff alleges a Field & Stream Stealth Climber Tree stand HEH01293 ("tree stand") manufactured by Defendant Primal Vantage Company, Inc. ("Primal") and sold by Defendant Dick's Sporting Goods, Inc. d/b/a Field & Stream failed while Plaintiff was using it and that Plaintiff sustained injuries as a result. (Dkt. No. 33). Plaintiff brings claims for (1) Negligence—Product Defect; (2) Breach of Warranty; and (3) Strict Liability.

Defendants move to exclude opinions offered by Plaintiff's proffered expert Rick Brenner. (Dkt. Nos. 93, 106). Plaintiff opposes. (Dkt. No. 98).

Defendants' motion is fully briefed and ripe for disposition.

II.   **Legal Standard**

Under Fed. R. Evid. 702, the Court acts as a gatekeeper "to verify that expert testimony is based on sufficient facts or data." *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v. Merrell Dow*

*Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 Fed. Appx. 226, 227 (4th Cir. 2015).

The trial court must ensure that (1) "the testimony is the product of reliable principles and methods," (2) the "expert has reliably applied the principles and methods to the facts of the case," and (3) the "testimony is based on sufficient facts and data." Fed. R. Evid. 702(b), (c), (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592-93, and whether the expert has "faithfully appl[ied] the methodology to the facts." *Roche v. Lincoln Prop. Co.*, 175 Fed. Appx. 592, 602 (4th Cir. 2006). Additionally, the Court must evaluate any proposed expert testimony under the standards of Fed. R. Evid. 403 to determine whether the probative value of the evidence, if relevant, is substantially outweighed by the risk of misleading or confusing the jury.

Factors to be considered in assessing the reliability of technical or scientific evidence include "whether a theory or technique ... can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operations," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94. The *Daubert* factors are not exhaustive and illustrate the type of factors "that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying or through research conducted independent of litigation." *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158 at

*3 (4th Cir. 1998); *Daubert v. Merrell Dow Pharm. Inc.*, 113 F.3d 1311, 1317 (9th Cir. 1995) (on remand).

The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). The Fourth Circuit has held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors. *Persinger v. Norfolk & W. R. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990); Rule 702 (requiring that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge"); *Scott v. Sears, Roebuck, & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) (noting by negative implication that "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."). The admission of "common sense" expert testimony is dangerous because "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.*

### III.    Discussion

The Court has reviewed Brenner's expert report in its entirety. (Dkt. No. 93-2). If permitted, "Brenner will offer testimony to assist the jury to understand the standard of care and best practices for consumer products manufacturers, and, specifically, how Primal [] failed to meet these standards." (Dkt. No. 98 at 2). Defendants argue Brenner is not qualified to offer such opinions because, despite his extensive experience with product safety and quality management practices, (Dkt. No. 93-3) (Brenner C.V.), Brenner is not an engineer, not familiar with tree stands, and, *inter alia*, has not physically examined the evidence in this case, (Dkt. No. 93-1 at 14).

The Court denies Defendants' motion on this point and finds Brenner qualified to offer opinions on the standard of care and best practices for consumer products manufacturers or

importers. Brenner describes his extensive experience as a "manufacturer, importer, and product safety professional" in his report. (Dkt. No. 93-2 at 3-6). This includes, for example, being president and CEO of Prime Resources Corporation for 12 years, an "importer, manufacturer, and distributor of consumer products . . . sourced from multiple overseas factories" where Brenner had "direct oversight responsibility for Prime's overseas sourcing business including the development of our standard operating procedures for product safety, risk assessment, compliance management, selection and vetting of vendors, factory oversight, correction actions, factory auditing . . . and product safety testing." (*Id.* at 3-4) (further noting Brenner was Prime's "Senior Compliance Officer and had full responsibility for Prime's product safety and regulatory compliance management programs"); *see also* (*id.* at 4-6) (describing other relevant experience including founding Product Safety Advisors, a "consultancy through which [Brenner] provide[s] product safety and compliance advisory and outsourced management services").

Last, Defendants argue Brenner's opinions must be excluded because they are speculative, unreliable, and legal in nature. Namely, Defendants argue that Brenner's testimony that Primal "did not conduct specific risk assessments under CPSC [Consumer Product Safety Commission] and ISO [International Organization for Standardization 10377:2013 Consumer Product Safety Guidelines for Suppliers] standards" should be excluded because he admitted "that those are not mandatory standards for manufacturers of consumer products." (Dkt. No. 93-1 at 18).

The Court denies Defendants' motion on this point. Brenner's opinions are based on his relevant knowledge and experience described above. Further, Brenner bases his opinions regarding Primal's alleged disregard for the safety of consumers on evidence—namely deposition testimony—adduced in this case. *See* (Dkt. No. 93-2 at 35) (concluding that Primal "violated well recognized industry standards in not employing or engaging the services of a professional product

4

safety engineer to manage and oversee the safety and compliance of its products, their design and specifications, production and testing programs"); (*Id.* at 14-21) (explaining the limitations of ASTM testing—the testing Defendants argue is relevant—and why CPSC and ISO provide more robust voluntary standards). Brenner does not purport to be a design or engineering expert and cannot opine on whether the products or component parts of those products at issue here are defective. Nor can Brenner opine that any alleged failure on Primal's part to meet the standards of care Brenner articulates rendered the products at issue defective. However, Brenner will be able to testify, generally, as to what he believes constitute best practices for a manufacturer or importer of products such as Primal and how Primal did not live up to those standards considering the evidence adduced in this case and cited in his report.

Defendants raise concerns that Brenner's testimony could veer into character attacks on Primal or an opinion that Primal's alleged failure to follow the standards Brenner articulates rendered the products at issue here defective. (Dkt. No. 106 at 5); (Dkt. No. 93-2 at 35) (opining, as to the safety harness at issue in this litigation, that Defendant exhibited "gross negligence"). The Court has addressed such concerns in this order and will further address such issues as they arise before or at trial.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to exclude the testimony of Brenner. (Dkt. No. 93).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

July 15, 2024
Charleston, South Carolina